UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Bank of New York Mellon, fka Bank of New York, as Trustee for the Certificateholders of CWALT, Inc. Alternative Loan Trust 2005-82, Mortgage Pass-Through Certificates Series 2005-82,<br><br>    Plaintiff<br>v.<br><br>SFR Investments Pool 1, LLC, et al.,<br><br>    Defendants | Case No. 2:18-cv-01375-JAD-VCF<br><br>**Summary Judgment Order**<br><br>[ECF Nos. 92, 93, 95] |

    This is one of the hundreds of lawsuits in this district in which the holder of a deed of trust seeks a declaration that a homeowner's association's non-judicial foreclosure sale did not extinguish its security interest. Here, Bank of New York, as Trustee for the owners of a mortgage trust from 2005, sues the Liberty at Paradise Community Association (the HOA), which conducted the 2014 foreclosure sale of a home on which it holds the first deed of trust, along with the foreclosure-sale purchaser SFR Investments Pool 1, LLC.[1] The bank, the HOA, and SFR cross-move for summary judgment.[2]

    I find that the tender by the bank's predecessor-in-interest of more than the full superpriority portion of the HOA's lien before the foreclosure sale saved the deed of trust from extinguishment. So I grant summary judgment in favor of the bank on its quiet-title claim based

---

[1] The bank also sued the foreclosed-upon property owner, Timothy Hanson, who has not appeared or otherwise participated in this case. *See* ECF No. 61 (denying request to enter default without prejudice).

[2] I find these motions suitable for disposition without oral argument. L.R. 78-1.

on a tender-rejected theory. The bank concedes that its UFTA claim fails as a matter of law, so I grant summary judgment in favor of the defendants on it. And because the resolution of the quiet-title claim in the bank's favor moots its other quiet-title theories and the bank's contingent implied-covenant claim against the HOA, I dismiss them, leaving only the bank's judicial-foreclosure claim against SFR and Hanson. Finally, I order all remaining parties to a settlement conference with the magistrate judge.

**Background**

Timothy Hanson purchased the home at 1091 Paradise Coach Drive in Henderson, Nevada, with a $224,000.00 mortgage secured by a deed of trust.[3] After an assignment, the Bank of New York Mellon now holds that deed of trust.[4] The home is located within the Paradise Coach Resorts planned-unit development community and subject to the governing documents for the Liberty at Paradise homeowners' association.[5] The Nevada Legislature gave homeowners' associations a superpriority lien against residential property for certain delinquent assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure for them to enforce that lien.[6] The monthly assessment for the Hanson home was $147.00,[7] and after months of nonpayment, the HOA—through its agent Nevada

---

[3] ECF No. 93-1 at 2 (deed of trust).
[4] ECF No. 93-2 (assignment recorded 10/6/2011).
[5] ECF No. 92-7 (governing documents).
[6] Nev. Rev. Stat. § 116.3116; *SFR Inv. Pool 1 v. U.S. Bank* ("*SFR I*"), 334 P.3d 408, 409 (Nev. 2014).
[7] *See* ECF No. 93-18 (ledger for months preceding March 2009 notice of delinquent assessment lien). The assessments were increased to $152.00 per month beginning in 2011. *See* ECF No. 93-10 at 12 (ledger through June 2011).

Association Services, Inc.—commenced foreclosure proceedings by sending a notice of delinquent assessment dated March 27, 2009.[8]

When the then-holder of the deed of trust, MERS, learned of the impending foreclosure, its counsel, the law firm of Miles, Bauer, Bergstrom & Winters, LLP, sent a letter to the HOA, advising that its client "hereby offers to pay" the nine months of assessments for common expenses incurred before the date of the HOA's notice of delinquent assessment and asking the HOA to "refrain from taking further action to enforce this HOA lien until" the parties could "speak to attempt to fully resolve all issues."[9] The HOA responded with an account statement reflecting "Dates of Delinquency: 07/07–06/11," that assessments were charged on a monthly basis, and that the last six months of assessments (which appear to have been for the first six months of 2011) were charged at a rate of $152.00, while the 42 delinquent months before that were charged at a rate of $147.00.[10] That statement also reflected no nuisance-abatement or maintenance charges.[11] Miles Bauer responded by tendering to the HOA a check for $1,368.00.[12] The check was returned,[13] and the HOA foreclosed on the property three years later on July 25, 2014.[14] The property was purchased by SFR for $18,152.00.[15]

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that

---

[8] ECF No. 93-3 (notice of delinquent assessment lien).
[9] ECF No. 93-10 at 9–10.
[10] *Id*. at 12.
[11] *Id*.
[12] *Id*. at 17.
[13] *Id*. at 5, ¶ 11 and at 7.
[14] ECF No. 93-11 at 2 (foreclosure deed recorded on 7/29/14).
[15] *Id*.

lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[16] The bank brings this action to save its deed of trust from extinguishment. It pleads claims against all defendants for quiet title and "judicial foreclosure," and adds a claim against SFR and the HOA for violation of Nevada's Uniform Fraudulent Transfer Act ("UFTA," NRS 112.190) and a claim against the HOA for breach of the covenant of good faith and fair dealing that is implied in the HOA's governing documents.[17] The bank's quiet-title claim is the type recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—an action "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[18] The resolution of such a claim is part of "[t]he long-standing and broad inherent power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[19]

Discovery has closed,[20] and the parties cross-move for summary judgment: the bank seeking summary judgment only on its quiet-title claim, and the HOA and SFR asking for summary judgment on all claims against them.[21] The bank primarily argues that its predecessor's tender of the full superiority lien amount makes this case procedurally identical

---

[16] *SFR I*, 334 P.3d at 419.

[17] ECF No. 58. The bank also asserts a "cause of action" against SFR for injunctive relief. *See id*. at 9. But injunctive relief is a remedy and not an independent claim, so I instead construe the bank's second claim for relief as a prayer for injunctive relief in conjunction with the quiet-title claim.

[18] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[19] *Id*. at 1112.

[20] ECF No. 89 (scheduling order with a discovery cutoff of 7/31/2020).

[21] ECF Nos. 92 (HOA); 93 (the bank); 95 (SFR).

4

to *Bank of America v. SFR Investments Pool 1, LLC*, colloquially known as the "*Diamond Spur*" case, in which the Nevada Supreme Court held that "after a valid tender of the superpriority portion of an HOA lien, a foreclosure sale on the entire lien is void as to the superpriority portion," so the foreclosure-sale purchaser takes the property subject to the deed of trust.[22]  For its part, SFR argues that this action is time-barred because the amended complaint was filed outside the statutory period, that the bank cannot establish the validity of its security interest, and that the Nevada Supreme Court's decision in *Wells Fargo Bank v. Radecki* precludes the bank's UFTA claim.[23]  The HOA joins in SFR's challenge to the bank's UFTA claim and maintains that it is not a proper party to the bank's claims to enforce its security interest and that there is no contract between itself and the bank from which a bad-faith claim can spring.[24]

        Tackling the timeliness challenge first, I note that this argument was raised while SFR had pending a motion challenging my conclusion that the bank's claims in its amended complaint relate back to the original filing and are timely.[25]  That motion has since been denied, and I reaffirmed that the bank's claims are timely.[26]  So I reject the defendants' timeliness challenge for the same reasons that I did in my most recent order.[27]  I then hold that the bank has established that its predecessor validly tendered the superpriority portion of the lien amount, voiding the HOA's sale on the superpriority portion and causing the deed of trust to survive the sale, so I grant summary judgment in favor of the bank on its quiet-title claim.  Because the bank

---

[22] *Bank of America v. SFR Inv. Pool 1, LLC* ("*Diamond Spur*"), 427 P.3d 113, 121 (Nev. 2018) (en banc).
[23] ECF No. 95.
[24] ECF No. 92.
[25] ECF No. 63 (motion for reconsideration).
[26] ECF No. 100.
[27] *Id*.

concedes that its UFTA claim fails, I grant summary judgment in favor of the defendants on that claim. Because the bank's success on its quiet-title claim moots its contingent bad-faith claim against the HOA, I dismiss that claim, and I also dismiss the judicial-foreclosure claim as against the HOA, for it is not a proper target of that claim. I deny the motions in all other respects.

## Discussion

### A.  Summary-judgment standards

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[28] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[29] If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[30]

Who bears the burden of proof on the factual issue in question is important. When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[31] Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing

---

[28] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[29] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[30] FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[31] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992) (citation and quotations omitted)).

party, who must present significant probative evidence tending to support its claim or defense."[32] When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[33] The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[34] "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[35] It is with these principles in mind that I consider the parties' motions for summary judgment.

**B.  The tender of the superpriority amount cured the default, so SFR took the property subject to the deed of trust.**

The bank argues that Miles Bauer's tender of $1,368.00, which included nine months' worth of assessments, operated to discharge the HOA's superpriority lien, so the deed of trust was not extinguished by the foreclosure sale. The bank relies on *Diamond Spur*, in which the Nevada Supreme Court, sitting en banc, held that a nearly identical "tender cured the default as to the superpriority portion of the HOA's lien, [so] the HOA's foreclosure on the entire lien

---

[32] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (citation omitted).

[33] *See, e.g.*, *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[34] *Celotex*, 477 U.S. at 322.

[35] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

resulted in a void sale as to the superpriority portion. Accordingly, the HOA could not convey full title to the property, as [the] first deed of trust remained after foreclosure . . . [and the foreclosure-buyer] purchased the property subject to [the] deed of trust."[36] In *Diamond Spur*, just as here, Miles Bauer contacted the HOA to get clarification on the superpriority amount due.[37] Based on the information received from the HOA, Miles Bauer tendered nine months' worth of assessments to the HOA with a letter nearly identical to the one here.[38] And just as in this case, the HOA nevertheless sold the property at foreclosure.[39]

The Nevada Supreme Court explained that "[a] valid tender of payment operates to discharge a lien or cure a default."[40] Although a valid tender requires payment in full, for purposes of satisfying an HOA's superpriority lien and thus saving a deed of trust from extinguishment under the version of the foreclosure statute in effect in 2013, the bank needed to pay only "charges for maintenance and nuisance abatement, and nine months of unpaid assessments."[41] Because the bank properly calculated nine months' worth of assessments based on the HOA's information, "and the HOA did not indicate that the property had any charges for maintenance or nuisance abatement," the *Diamond Spur* Court found that, "[o]n the record presented, this was the full superpriority amount."[42]

---

[36] *Diamond Spur*, 427 P.3d at 121.
[37] *Id.* at 116
[38] *Id.*
[39] *Id.* at 116–17.
[40] *Id.* at 117.
[41] *Id.* (citing 116.3116(2) and *SFR I*, 334 P.3d at 412). That was the same version of the statute in effect during this 2014 foreclosure; the statute was amended in 2015.
[42] *Id.* at 118.

*Diamond Spur* is dispositive and compels summary judgment in favor of the bank here. The record shows undisputedly that Miles Bauer validly tendered more than the full amount of the superpriority lien to the HOA. The only charges that could comprise the superpriority portion of the HOA's lien were "charges for maintenance and nuisance abatement, and nine months of unpaid assessments."[43] The HOA's own ledger reflects no charges for maintenance or nuisance abatement, and the accounting that the HOA's agent provided just before the July 2011 tender calculated the past nine months of unpaid assessments at $152.00 for the previous six months, and $147.00 for all months before that.[44] Miles Bauer tendered a check for $1,368.00, which is $152.00 x 9,[45] which it described as "the maximum 9 months['] worth of common assessments as well as reasonable collections costs to satisfy its obligations to the HOA as a holder of the first deed of trust against the property."[46] In fact, this payment was more than the bank owed because the nine-month lookback period is triggered by the date of the notice of delinquent assessment lien, which was sent for this property back in March 2009 when the monthly assessments were $147.00. So, as the Nevada Supreme Court held in *Diamond Spur*, the foreclosure sale on the entire lien resulted in a void sale as to the superpriority portion, the "first deed of trust remained after foreclosure," and "the HOA could not [receive—and later] convey [to the Trust] full title to the property."[47] The bank is therefore entitled to summary

---

[43] *Id*. at 117 (citing 116.3116(2) and *SFR I*, 334 P.3d at 412).
[44] ECF No. 93-10 at 12.
[45] *Id*. at 17.
[46] *Id*. at 16.
[47] *Diamond Spur*, 427 P.3d at 121.

judgment on its quiet-title claim and a declaration that SFR purchased the property subject to the deed of trust.[48]

### 1. The tender was not impermissibly conditional.

SFR argues that a Ninth Circuit panel recently held in *CitiMortgage, Inc. v. Corte Madera Homeowners Association*[49] that the language in the Miles Bauer form letter sent in this case was impermissibly conditional, "thus precluding the finding of a valid tender."[50] But the *Corte Madera* opinion has no application here because no tender was made in that case. In *Corte Madera*, the holder of the deed of trust was arguing that Miles Bauer's letter *offer* to pay the superpriority portion of the lien was alone enough to save the deed of trust from extinguishment and that actual tender was not needed. The panel found that the language of the letter fell short of that goal because it offered to pay nine months' worth of common assessments "and 'not one penny more' [which]. . . was not the equivalent of an offer to pay the superpriority portion" of the HOA's lien, which might also have included nuisance-abatement or maintenance charges on top of the assessments.[51]

Here, the bank is not seeking to have the Miles Bauer letter deemed the functional equivalent of a tender—its rejected check for more than the true superpriority amount was an

---

[48] Because I grant summary judgment on the tender theory, I need not and do not reach the bank's other quiet-title theories pled in its complaint. Moreover, SFR's argument that Nevada law presumes the sale was conducted properly, *see, e.g.*, ECF No. 95 at 8–11, is irrelevant to the tender theory. As the Nevada Supreme Court explained in *Shadow Wood*, 366 P.3d at 1112 (quoting *Holland v. Pendleton Mortg. Co.*, 143 P.2d 493, 496 (Cal. 1943)) (emphasis omitted), those presumptions are only conclusive "in the absence of grounds for equitable relief." They do "not eliminate the equitable authority of the courts to consider quiet title actions . . . ." *Id*. Here, the validity of the foreclosure notices and foreclosure process are extraneous to the salient issue in a tender claim: whether the lien that the HOA foreclosed upon had a superpriority component.

[49] *CitiMortgage, Inc. v. Corte Madera Homeowners Ass'n*, 962 F.3d 1103 (9th Cir. 2020).

[50] ECF No. 99 at 10.

[51] *Corte Madera*, 962 F.3d at 1108.

actual tender. And we know from the HOA's accounting information that the superpriority amount did not include nuisance-abatement or maintenance charges.[52] Thus, the record here, unlike that in *Corte Madera*, establishes that Miles Bauer had the right to claim that its tender satisfied the full superpriorty amount of the HOA's lien on this property. As the *Diamond Spur* Court expressly held when considering verbatim language in the Miles Bauer tender letter in that case, the bank "had a legal right to insist on" the condition because "acceptance of the tender would satisfy the superpriority portion of the lien, preserving" the bank's interest in the property.[53]

### 2. *The record establishes the bank's entitlement to summary judgment.*

Finally, SFR argues that the bank's evidence of tender is insufficient to eliminate a genuine issue of fact.[54] But the Miles Bauer evidence, which this court has now seen in scores of these HOA-foreclosure cases, and which is being replicated across hundreds of cases in Nevada's state and federal courts, sufficiently establishes that tender was made and rejected. Douglas E. Miles's affidavit is heavily detailed, relates specifically to this property, and established that Mr. Miles is qualified to lay a foundation for the admissibility of the tender documents under the business-records exception to the hearsay rule.[55] SFR proffers nothing but speculation and demands for more and additional types of proof, which fails to create more than a metaphysical doubt as to the HOA's receipt and return of the check.

---

[52] ECF No. 93-10 at 16–17.
[53] *Diamond Spur*, 427 P.3d at 118.
[54] ECF No. 99 at 8.
[55] ECF No. 93-10 at 2–5.

### C. The bank concedes that its UFTA claim fails.

In response to SFR's and the HOA's summary-judgment motions, the bank "acknowledges [that] the Nevada [S]upreme [C]ourt has issued an opinion preventing NRS 112.190's application to HOA foreclosure sales . . . ."[56] The defendants are thus entitled to summary judgment in their favor on the bank's fourth cause of action for violating Nevada's UFTA.

### D. Genuine issues of fact preclude summary judgment for SFR on the bank's judicial-foreclosure claim.

In its third cause of action, the bank seeks "an order directing a foreclosure sale of the property" because "Hanson has not paid the loan in accordance with the terms of the note and senior deed of trust."[57] SFR moves for summary judgment in its favor, first on its now-failed argument that the bank's deed of trust was extinguished by the HOA's foreclosure, and secondly based on the argument that the bank can't prove that it owns the note and deed of trust.[58]

The bank has sufficiently demonstrated its interest in the deed of trust to survive summary judgment on this claim. The recorded chain of title shows that the deed of trust was assigned from its original beneficiary, MERS, to the bank in 2011.[59] The declaration of Jean Knowles, representative of the bank's loan servicer for this loan, Shellpoint Mortgage Servicing, establishes that the promissory note itself "was endorsed from Soma Financial to Countrywide Bank, N.A., then from Countrywide Bank, N.A. to Countrywide Home Loans, Inc.," who "then

---

[56] ECF Nos. 96 at 8, 97 at 6.
[57] ECF No. 58 at 10, ¶ 59.
[58] ECF No. 95 at 12–13.
[59] ECF Nos. 93-2 (assignment recorded 10/6/2011); 97-1 at 3, ¶ 7.

endorsed the note in blank."[60]  Knowles further declares that the bank, "through its agent/custodian, maintains possession of the note and is the current owner and holder of the note and beneficiary of the deed of trust."[61]  SFR offers no evidence to suggest otherwise.  This record is sufficient to create a genuine issue of fact that precludes summary judgment on this judicial-foreclosure claim.  However, as the HOA points out, and with the quiet-title claim resolved, the HOA is not a necessary party to this claim, so I dismiss it as to the HOA.

### E. The breach-of-the-implied-covenant claim is moot.

These summary-judgment rulings leave only the bank's fifth cause of action for breach of the covenant of good faith and fair dealing against the HOA.  But it appears that the bank's success on its quiet-title claim has mooted this claim.  Though the implied-covenant claim, which seeks only damages, does not itself state that it is pled conditionally, the bank's prayer for relief indicates that it is as the bank prays for "[d]amages in the event the HOA's foreclosure extinguished [the bank's] deed of trust."[62]  The holding that the deed of trust survived the foreclosure sale thus appears to have mooted this claim, obviating my need to consider the HOA's summary-judgment arguments against it.  So I dismiss the bank's implied-covenant claim as moot and do not reach the HOA's final arguments challenging it.

### Conclusion

IT IS THEREFORE ORDERED that Bank of New York Mellon, fka Bank of New York, as Trustee for the Certificateholders of CWALT, Inc. Alternative Loan Trust 2005-82, Mortgage Pass-Through Certificates Series 2005-82's Motion for Partial Summary Judgment **[ECF No.**

---

[60] ECF No. 97-1 at 4, ¶ 8.
[61] *Id*. at ¶ 9.
[62] ECF No. 58 at 12, prayer # 6.

**93] is GRANTED;** the bank is entitled to summary judgment on its quiet-title claim based on a tender theory.  IT IS FURTHER ORDERED that the bank's remaining quiet-title theories, and its breach-of-the-implied-covenant claim, are DISMISSED as moot.

      IT IS FURTHER ORDERED that Liberty at Paradise Community Association's Motion for Summary Judgment and SFR Investments Pool 1, LLC's Motion for Summary Judgment **[ECF Nos. 92, 95] are GRANTED in part and DENIED in part**:

- SFR and the Liberty at Paradise Community Association are entitled to summary judgment in their favor on the bank's fourth cause of action for breach of NRS 112.190;
- The judicial-foreclosure claim is dismissed as to the Liberty at Paradise Community Association; and
- The defendants' motions are denied in all other respects.

      This case proceeds only on the bank's third cause of action for judicial foreclosure against SFR and Hanson.  No claims remain against the Liberty at Paradise Community Association.

      IT IS FURTHER ORDERED that **this case is referred to the magistrate judge for a mandatory settlement conference with all remaining parties.**  The parties' obligations to file their proposed joint pretrial order are tolled until 10 days after that settlement conference.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: April 20, 2021