UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Bank of New York Mellon, fka Bank of New York, as Trustee for the Certificateholders of CWALT, Inc. Alternative Loan Trust 2005-82, Mortgage Pass-Through Certificates Series 2005-82,<br><br>    Plaintiff<br>v.<br><br>SFR Investments Pool 1, LLC, et al.,<br><br>    Defendants | Case No. 2:18-cv-01375-JAD-VCF<br><br>*and Member Case*<br>*2:19-cv-00137-JAD-VCF*<br><br>**Bench Trial Findings, Conclusions, and Judgment** |

    This is one of the myriad lawsuits in this district in which the holder of a deed of trust seeks to exercise its foreclosure rights against the investor who purchased the property during Nevada's foreclosure crisis for a fraction of the mortgage balance. Summary-judgment[1] and default proceedings[2] whittled this case down to Bank of New York Mellon's judicial-foreclosure claim against SFR Investments Pool 1, LLC. That lone remaining claim was tried in a bench trial on February 23, 2022.[3] Having considered the parties' trial submissions and supplemental filings, I find that the bank has proven this remaining claim and enter judgment in its favor.

---

[1] ECF No. 109 (summary-judgment order).
[2] ECF No. 136 (Clerk's entry of default against Hanson).
[3] ECF Nos. 137 (minutes); 139 (transcript).

**Findings of Fact**

Timothy Hanson purchased the home at 1091 Paradise Coach Drive in Henderson, Nevada, with a $224,000.00 30-year mortgage secured by a deed of trust.[4] After an assignment, the Bank of New York Mellon ("BONYM") now holds that deed of trust.[5] The promissory note, which is endorsed in blank, is in the vault of Bank of America, who is "the master servicer" for this loan and "the document custodian" for BONYM with respect to the loan.[6] Hanson made payments against that mortgage to satisfy his obligations through December 2008 only, putting him in default under the terms of the note and deed of trust.[7]

The home is located within the Paradise Coach Resorts planned-unit development community ("the HOA") and subject to the governing documents for the Liberty at Paradise homeowners' association.[8] The Nevada Legislature gave homeowners' associations a superpriority lien against residential property for certain delinquent assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure for them to enforce that lien.[9] Hanson also stopped paying his monthly assessments, so the HOA foreclosed on its lien in July of 2014.[10] Defendant SFR Investments Pool 1, LLC, purchased the home at that foreclosure sale for $18,152 and remains the record owner.[11] In the eight years that SFR has

---

[4] Exhibit 7 (note); Exhibit 3 (deed of trust).
[5] Exhibit 5 (assignment).
[6] Exhibit 7; ECF No. 139 at 22–23.
[7] ECF No. 139 at 56–57.
[8] *See* ECF No. 109 at 2 (summary-judgment order).
[9] Nev. Rev. Stat. § 116.3116; *SFR Inv. Pool 1 v. U.S. Bank* ("*SFR I*"), 334 P.3d 408, 409 (Nev. 2014).
[10] ECF No. 109 at 2–4.
[11] Exhibit 6; ECF No. 139 at 34.

held the property, no mortgage payment has been made, and BONYM has paid the taxes and insurance on the property "to protect the investment. . . ."[12]

In April of last year, on the parties' cross-motions for summary judgment, I held, based on a tender theory, that BONYM was entitled to summary judgment on its quiet-title claim and a declaration that SFR purchased the property subject to the deed of trust.[13] That ruling left only BONYM's judicial-foreclosure claim in which it seeks "an order directing a foreclosure sale of the property" because "Hanson has not paid the loan in accordance with the terms of the note and senior deed of trust."[14] At the time of trial, the note balance had climbed to $405,874.13.[15] SFR seeks to avoid that foreclosure based on three arguments: (1) the bank did not bring the original deed of trust and note to trial, and it was required to do so in order to prove that it possesses these documents and has the right to foreclose; (2) the debt was extinguished by virtue of NRS 106.240; or (3) the mortgage was extinguished by Hanson's 2008 bankruptcy discharge, triggering the bank's six-year statute of limitations to bring this judicial-foreclosure claim, and it missed that deadline by four years.

## Conclusions of Law[16]

**A.     The bank proved its judicial-foreclosure claim.**

When a borrower defaults on a mortgage note, the deed-of-trust beneficiary can bring an action for judicial foreclosure under NRS 40.430 to obtain an order directing the "sale of the

---

[12] ECF No. 139 at 34, 36.
[13] *Id*. at 9–10.
[14] ECF No. 58 at 10, ¶ 59.
[15] ECF No. 139 at 40.
[16] To the extent any determination in the findings-of-fact or conclusions-of-law sections should more properly fall into the other section, they should be so construed.

3

encumbered property. . . ."[17] When the note and the deed of trust have been separated as the Hanson documents were, the foreclosing party lacks standing unless it proves that it is entitled to enforce both the deed of trust and the note.[18]

BONYM met its burden at trial to establish its standing to foreclose on this property. It proved that borrower Hanson promised to "make all payments under th[e] Note," which included "payments every month until [he had] paid all the Principal and Interest and any other charges . . . that [he] may owe under this Note" through the "Maturity Date" of September 1, 2035.[19] But those payments were made through the end of 2008 only, leaving the borrower in default since that date.[20] The recorded documents admitted into evidence show that BONYM is the record beneficiary of the deed of trust as a result of a 2011 assignment from Mortgage Electronic Registration Systems ("MERS").[21] The sworn trial testimony of Jean Knowles, the representative of NewRez dba Shellpoint Mortgage Servicer, which is BONYM's loan-servicing agent on the Hanson note,[22] established unequivocally that Trial Exhibit 7 is a photocopy that "matches 100 percent" the original note, and the original is in the vault of Bank of America, which is the "master servicer" and "document custodian" for this loan.[23] So the trial evidence

---

[17] *Edelstein v. Bank of New York Mellon*, 286 P.3d 249, 254 (Nev. 2012); Nev. Rev. Stat. § 40.430.

[18] *Id*. at 256.

[19] Exhibit 7 at 1.

[20] ECF No. 139 at 34, 56–57.

[21] Exhibit 5 (assignment from MERS to BONYM).

[22] ECF No. 139 at 8, 12, 15.

[23] *Id*. at 21–22. There was no genuine question raised about the original's authenticity, and I find that the circumstances do not make it unfair to admit the duplicate into evidence, so the document is admissible to the same extent as the original under both Nevada law and federal law. *See* Fed. R. Evid. 1003; Nev. Rev. Stat. § 52.245.

established that the note and the deed of trust had been reunited in BONYM through its agents and that BONYM is the holder of the note, endorsed in blank, giving the bank standing and establishing BONYM's right to the remedies prescribed by NRS 40.430, including an order directing the sale of the property to satisfy this debt.[24]

**B.  This judicial-foreclosure claim is not barred by NRS 106.240.**

SFR contends that the bank's judicial-foreclosure claim is time-barred. NRS 104.3118(1) establishes a six-year statute of limitations for judicial-foreclosure actions.[25] The claim must be "commenced within 6 years after the due date or dates stated in the note or, if a due date is accelerated, within 6 years after the accelerated due date." Because the maturity date stated in the Hanson note is September of 2035, the first deadline in the statute clearly does not render this claim barred. So SFR relies on the six-years-after-acceleration clause and argues that the 2035 maturity date was accelerated and that the balance became wholly due back in March of 2009, shortly after Hanson's original default. And since the bank filed this action more than six years after that acceleration, the claim is time-barred. SFR also contends that the acceleration triggered NRS 106.240, which "creates a conclusive presumption that a lien on real property is extinguished ten years after the debt becomes due."[26] And because the maturity date was

---

[24] Although SFR argues that the blank-endorsement nature of the note required the bank to bring the original, wet-ink signature note to trial, Nevada law does not support this show-me-the-original-note theory, and the Nevada Supreme Court recognized in an unpublished decision in *Brame v. Bank of New York Mellon*, 455 P.3d 848, *2 (Nev. Jan. 23, 2020), that similar documentation and testimony about the possession of the note can satisfy the preponderance-of-the-evidence standard necessary to establish such a claim. Though this decision is not binding, it suggests that the Court would find the evidence in this case sufficient to support BONYM's claim here, too.

[25] Nev. Rev. Stat. § 104.3118(1); *U.S. Bank, N.A. v. Thunder Properties, Inc.*, 503 P.3d 299, 309 (Nev. 2022) (Pickering, J., concurring in part and dissenting in part).

[26] *Pro-Max Corp. v. Feenstra*, 16 P.3d 1074, 1077 (Nev. 2001).

accelerated beginning in March 2009 and no foreclosure occurred by March 2019, SFR theorizes that the deed of trust is extinguished and no longer enforceable.[27]

The deed of trust contains an acceleration provision that required the lender to give notice to the borrower "prior to acceleration following Borrower's breach . . . that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by" the deed of trust.[28]  No party offered such a notice as evidence at trial.  But SFR argues that there is enough circumstantial evidence of acceleration to conclude that one occurred in March of 2009.[29]  That evidence consists of Knowles's testimony.  In her review of the file, Knowles saw "several notices of intent to accelerate. . . ."[30]  She did not recall their dates but believed "the last one was in 2014 or '15."[31]  Knowles also acknowledged in testimony that it was typical of letters of this type to state that the loan "will be accelerated if—if it's not caught up. . . ."[32]  SFR argues that there is nothing to suggest that this typical process didn't happen for the Hanson loan, and because the notice of intent to accelerate would probably have gone out 45 days after the default, this loan became wholly due on March 15, 2009.

SFR's acceleration defense requires too many assumptions.  With no actual letter to reference here (let alone a recorded one), it cannot be confirmed when such a letter was sent or what language it contained.  It might be inferred from Knowles's testimony that such a letter would have gone out in the Spring of 2009 and would have contained notice that the bank "will

---

[27] *See* Complaint, ECF No. 1 (filed 7/25/2018).
[28] Exhibit 3 at 12, § 22 (Acceleration; Remedies).
[29] ECF No. 142 at 3 (SFR's supplemental brief).
[30] *Id.*; ECF No. 139 at 42.
[31] ECF No. 139 at 42.
[32] *Id.* at 63.

accelerate" the debt if the loan payments were not brought current.  But the law does not permit such inferences to carry the day.  As the Supreme Court of Nevada noted when addressing acceleration clauses in *Clayton v. Gardner*, "'acceleration is seldom implied, and courts usually require that an acceleration be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lender's intention.'"[33]  SFR's proof of acceleration falls far short of clear or unequivocal.  And it is weakened by the fact that Knowles also testified that "most" such letters say "they may accelerate" the loan and that she'd "have to look at [the letter from this file] specifically" to know what this one said.[34]  Knowles also testified at trial that there was only one actual acceleration of this loan—and that was when the complaint was filed in 2018—the file contains no other indications of the loan having been accelerated.[35]  So I cannot conclude that SFR met its burden to prove that the debt was accelerated in March 2009 or at any time that would lead me to conclude that the deed of trust is now extinguished under NRS 106.240.[36]

**C.    Hanson's bankruptcy did not trigger the statute of limitations on this judicial-foreclosure claim.**

SFR alternatively contends that the six-year statute of limitations began to run when the debt was discharged in Hanson's 2008 bankruptcy proceeding, making this 2018 case fatally late.[37]  As support for this theory, SFR relies exclusively on authority interpreting Washington's

---

[33] *Clayton v. Gardner*, 813 P.2d 997, 999 (Nev. 1991) (quoting *United States v. Feterl*, 849 F.2d 354, 357 (8th Cir. 1988)).

[34] ECF No. 139 at 59.  Counsel for SFR read into the record Knowles's deposition testimony in which she used the word "will" instead of "may," but it does not appear that there was a specific discussion about that term during that deposition.  *See id.* at 63.

[35] *Id.* at 41, 80.

[36] This assumes without deciding that "wholly due" means what SFR claims it does.

[37] ECF No. 142

7

statute of limitations for foreclosure actions.[38]  That Washington statute is materially distinguishable from NRS 106.240 in both language and effect.  And although the Ninth Circuit concluded in an unpublished disposition in *Jarvis v. Federal National Mortgage Association* that a bankruptcy discharge triggers Washington's statute of limitations on foreclosure actions,[39] Washington state courts interpreting that statute have since renounced that *Jarvis* interpretation as "error."[40]  So I decline to rely on this dubious authority.

Moreover, nothing in the deed of trust suggests that a bankruptcy discharge could automatically accelerate this debt,[41] and paragraph 22 of that document contains detailed requirements for triggering acceleration, including a notice that does not appear to have been provided in conjunction with the bankruptcy discharge here.[42]  To find that a bankruptcy discharge automatically accelerates a discharged debt would be an unwarranted exception to the Supreme Court of Nevada's recognition in *Clayton* that "courts usually require that an acceleration be exercised in a manner so clear and unequivocal that it leaves no doubt as to the

---

[38] *Id.*

[39] *Jarvis v. Fed. Nat'l Mortg. Ass'n*, 726 F. App'x 666, 667 (9th Cir. 2018) (citing *Edmundson v. Bank of Am.*, 378 P.3d 272, 276 (Wash. Ct. App. 2016)).

[40] *Copper Creek (Marysville) Homeowners Ass'n v. Kurtz*, 502 P.3d 865, 873 (Wash. Ct. App. 2022).

[41] *See generally* Exhibit 3.

[42] *Id*. at 12.  *See also Ramanathan as Tr. of Ramanathan Fam. Tr. v. Bank of New York Mellon*, 2021 WL 4486320 at *4 (D. Nev. Sept. 30, 2021) (holding that "although a bankruptcy petition accelerates debts for purposes of a bankruptcy proceeding, it does not necessarily do so for purposes of § 106.240," and "[l]ikewise, although the bankruptcy discharge relieved the debtors of personal liability on the debt, that happened by operation of the bankruptcy proceeding, not by the lender's option to accelerate under the terms of the note and deed of trust.").

lender's intention."[43]  So I do not find that Hanson's bankruptcy proceedings[44] accelerated the debt and triggered the statute of limitations.

## ORDER AND JUDGMENT

With good cause appearing and no reason to delay, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that **the Bank of New York Melon is entitled to judgment in its favor on its third cause of action for judicial foreclosure and may sell the real property located at 1091 Paradise Coach Drive in Henderson, Nevada, (APN 179-34-711-034) at a foreclosure sale** to satisfy the outstanding amounts owed to the Bank of New York Melon under the deed of trust recorded in the Clark County Public Records on August 25, 2005, as Document Number 2005-0825-0001506, and the promissory note referenced therein.

As the court previously granted summary judgment on the remaining claims [ECF No. 109] but did not enter judgment at that time, IT IS FURTHER ORDERED that **the Clerk of Court is directed to ENTER JUDGMENT:**

- **In favor of Plaintiff** the Bank of New York Melon on its first cause of action for quiet-title (based on a tender theory), declaring that the deed of trust recorded in the Clark County Public Records on August 25, 2005, as Document Number 2005-0825-0001506 survived the 2014 foreclosure sale and remains an encumbrance upon the property;
- **In favor of Plaintiff** the Bank of New York Melon on its third cause of action for judicial foreclosure; and

---

[43] *Clayton*, 813 P.2d at 999 (quoting *United States v. Feterl*, 849 F.2d 354, 357 (8th Cir. 1988)).

[44] Additionally, the information in the record about Hanson's bankruptcy discharge is thin. Knowles acknowledged in her trial testimony that "the date that Mr. Hanson was discharged from his bankruptcy" was "somewhere" in the bank's system. ECF No. 139 at 70. And counsel for SFR represented that "it's a publicly filed document" and asked the court "to take judicial notice of the exact date just for completion's sake." *Id*. at 83. But the details of the discharge are not in the record, and the bankruptcy documents were not produced during discovery. *Id*. at 84.

- **In favor of Defendants** Liberty at Paradise Community Association and SFR Investments Pool 1, LLC on the bank's fourth cause of action for breach of NRS 112.190.[45]

The Clerk of Court is further directed to **CLOSE these consolidated cases and refund the cost deposits in these two matters** to The Bank of New York Mellon, c/o Akerman, LLP, 1635 Village Center Circle, Suite 200, Las Vegas, NV 89134.[46]

IT IS FURTHER ORDERED that a copy of this order may be recorded against the property with the Clark County Recorder.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: September 26, 2022

---

[45] The remaining claims were dismissed by order. ECF No. 109.

[46] *See* certificates of cash deposits at ECF No. 20 in 2:18-cv-1375-JAD-VCF and ECF No. 12 in 2:19-cv-137-JAD-VCF.